UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JUSTIN MILON McDOW,

                              Plaintiff,

           -vs-                                          13-CV-178-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

---

APPEARANCES:        JAYA A. SHURTLIFF, ESQ.
                                Law Offices of Kenneth Hiller
                                Amherst, New York
                                Attorney for Plaintiff

                                WILLIAM J. HOCHUL, JR.
                                United States Attorney, Western District of New York
                                (MARY K. ROACH, AUSA, of Counsel)
                                United States Attorney's Office
                                Buffalo, New York
                                Attorneys for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny entered on April 16, 2014. Item 20.

Plaintiff Justin McDow initiated this action pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), to review the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits, as provided for in Title XVI of the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on June 16, 1986 (Tr. 38).[1] He applied for SSI benefits on February 23, 2010, alleging disability due to mental impairments with an onset date of June 18, 2004 (Tr. 128-31). Upon denial of the application at the initial level of agency review (Tr. 87-89), plaintiff requested a hearing which was held on October 5, 2011, before Administrative Law Judge ("ALJ") Bruce R. Mazzarella (Tr. 31-85). Plaintiff appeared and testified at the hearing, and was represented by counsel. Plaintiff's girlfriend Hisonia Lyons, and Vocational Expert ("VE") Jay Steinbrenner, also testified at the hearing.

On October 24, 2011, the ALJ issued a decision denying plaintiff's application for Title XVI benefits (Tr. 15-27). Following the five-step sequential process for evaluating disability claims outlined in the Social Security Regulations at 20 C.F.R. § 416.920(a), the ALJ determined that plaintiff's impulse control disorder, personality disorder, and mild attention deficit hyperactivity disorder caused "more than minimal limitations in [his] ability to perform basic work activities and therefore are severe." (Tr. 20). However, the ALJ determined that these mental impairments, considered singly and in combination, did not meet or medically equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically, Listings 12.02 (Organic Mental Disorders), 12.05 (Mental Retardation), and 12.08 (Personality Disorders) (Tr. 20-22). The

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 9).

ALJ found that the evidence in the record, including plaintiff's testimony and statements regarding the limiting effect of his symptoms and the reports and opinions of consultative and treating medical sources, demonstrated that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but limited to simple, repetitive and routine tasks in a low contact work environment (Tr. 22-26). Based on plaintiff's age (23 as of the filing date; 25 at the time of the hearing), education (high school Individualized Education Plan ("IEP") diploma), work experience (no past relevant work), and RFC, and considering the testimony of the VE with regard to the effect plaintiff's limitations would have on the occupational base of unskilled work at all exertional levels, the ALJ determined that a finding of "not disabled" was appropriate under the framework of the Medical-Vocational Guidelines (the "Grids"), Rule 204.00 (Tr. 26-27). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 204.00.

The ALJ's decision became the Commissioner's final determination on December 26, 2012, when the Appeals Council denied plaintiff's request for review (Tr. 1-4). Plaintiff then filed this action on February 19, 2013, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), and both parties have moved for judgment on the pleadings under Fed. R. Civ. P. 12(c) (Items 8, 13).

Plaintiff raises the following contentions in support of his motion:

1. The ALJ failed to properly evaluate the severity of plaintiff's cognitive disorders in assessing whether plaintiff's mental impairments meet or medically equal the criteria of the Listings;

2. The ALJ failed to properly evaluate plaintiff's mental RFC.

*See* Items 8, 18. The Commissioner contends that the ALJ's determination is supported by substantial evidence, and should be affirmed. *See* Items 13, 22.

## DISCUSSION

### I. Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *see also Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie*, 2010 WL 276740, at *6.

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

**II. Standards for Determining Eligibility for Disability Benefits**

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy ...." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 416.905(a). As indicated above, the Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§ 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. § 416.920(c); *see also* § 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment

found in the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  See *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a

vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' " *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III. The ALJ's Disability Determination

In this case, ALJ Mazzarella found at step one of the five-step sequential evaluation process that plaintiff had not engaged in substantial gainful employment activity since February 23, 2010, the application date (Tr. 20). At step two, as indicated above, the ALJ found the evidence in the record sufficient to establish that plaintiff's impulse control disorder, personality disorder, and mild attention deficit hyperactivity disorder were "severe" within the meaning of the Regulations (*id.*). However, the ALJ determined at step three of the sequential evaluation that plaintiff's impairments, considered singly and in combination, did not meet or equal the severity of a listed mental impairment under the criteria of Listings 12.02, 12.05, and 12.08 (Tr. 20-22).

To satisfy the criteria of Listings 12.02 and 12.08, the claimant must show (among other things) that his or her mental impairment results in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence or pace; or
4. Repeated episodes of decompensation, each of extended duration ….

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(B), 12.08(B) (Paragraph "B" criteria). A claimant can also satisfy the criteria of Listing 12.02 by presenting a medically documented

history of a chronic affective disorder of at least two years' duration, and one of the following:

1. Repeated episodes of decompensation, each of extended duration;

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate;

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.02(C) (Paragraph "C" criteria). Listing 12.05 requires, among other things, "[a] valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the" Paragraph B criteria listed above. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(D) (Paragraph "D" criteria).

With regard to Paragraph B and Paragraph D criteria, ALJ Mazzarella found that plaintiff had no restriction in the activities of daily living; moderate difficulties in maintaining social functioning; moderate deficiencies of concentration, persistence or pace; and no episodes of decompensation of extended duration (Tr. 21). The ALJ also found no evidence to establish the presence of any of the Paragraph C criteria (*id.*). Specifically with respect to the additional requirements of Listing 12.05, the ALJ found that the evidence did not reveal a valid verbal, performance, or full scale IQ of 60 through 70 (Tr. 22).

The ALJ then determined that plaintiff had the RFC for a full range of work at all exertional levels, limited to the performance of simple, repetitive and routine tasks in a "low contact" work environment (Tr. 22). At step four, the ALJ found that plaintiff had no past relevant work, and at step five, the ALJ relied on the VE's testimony to find that plaintiff

was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 26-27).

## IV.     Plaintiff's Motion

### A.     Failure to Consider Evidence of Severe Cognitive Impairments

In support of his motion for judgment on the pleadings, plaintiff contends that in determining whether the combined effect of plaintiff's mental impairments met the criteria of the Listings, the ALJ failed to consider evidence of plaintiff's mental retardation and other cognitive deficits. Plaintiff relies on the report of consultative examiner Renee Baskin, Ph.D., who administered a Test of Nonverbal Intelligence ("TONI-III") test on June 3, 2010 which "yielded a quotient of 63 … suggest[ing] that [plaintiff] is functioning in the mildly retarded range of intelligence" (Tr. 233), and placing plaintiff within the threshold IQ requirement of Listing 12.05. However, the court's review of the record reveals that the ALJ did consider Dr. Baskin's report and the results of the TONI-III test, but determined that the score was not a "valid" representation of plaintiff's intellectual functioning because it was inconsistent with educational records, results of a September 2003 administration of a Wide Range Achievement Test ("WRAT"), and other evidence (including plaintiff's "deficient" presentation at the consultative examination) indicating that plaintiff's cognitive deficits were not "so extreme as to preclude employment" (Tr. 22; *see also* Tr. 25). *See Edwards v. Astrue*, 2010 WL 3701776, at *5 (N.D.N.Y. Sept. 16, 2010) ("An ALJ is permitted to reject an IQ score as invalid when it is inconsistent with the record but must explain the basis for that decision."); *Alvarado v. Barnhart*, 432 F. Supp. 2d 312, 317 (W.D.N.Y. 2006) (finding ALJ did not err in giving little weight to TONI-III score of 63; "[T]he

question before the Court is not whether the ALJ would have been justified in finding that plaintiff is mildly mentally retarded, but whether there is substantial evidence to support his finding that she is not.").

Plaintiff also relies on the opinion of Nurse Practitioner Adrienne Roy contained in the report of a psychiatric assessment performed on August 31, 2011, that plaintiff "is a clearly disabled individual and seems to have a low potential for working successfully in the competitive market" due to his behavioral problems (Tr. 294).  However, the ALJ noted that this opinion was rendered upon initial evaluation, prior to any treatment or medication, and was inconsistent with the follow-up report of psychiatrist Ramon Ran, MD, dated September 23, 2011, indicating that plaintiff demonstrated "no gross cognitive deficits" (Tr. 289).

The ALJ also noted the Comprehensive Psychiatric Emergency Program ("CPEP") reports in the record indicating that on July 14, 2010, plaintiff was evaluated at the Erie County Medical Center by Dr. Calvert G. Warren, MD, for "psychiatric clearance for social security" (Tr. 23, 281).  On mental status examination, plaintiff was cooperative and polite, with "okay" mood and appropriate behavior and affect (Tr. 280).  His speech was normal and his thought process was organized and goal-directed (Tr. 280).  He denied suicidal and homicidal ideation, delusions, hallucinations, phobias, and obsessions (Tr. 280-81). He was fully oriented, his memory was intact, and his intellectual functioning, insight, and judgment were fair (Tr. 281).  Dr. Warren assessed a GAF score of 71-80,[2] and reported

---

[2] A GAF is a scale from 0 to 100 that may be used to report the clinician's judgment of the individual's overall symptom severity and the level of his or her functioning.  A GAF score of 51–60 indicates a person with moderate symptoms or moderate difficulty in social, occupational or school functioning.  A GAF score of 61–70 indicates a person with some mild symptoms or some difficulty in social, occupational, or school functioning, but who is generally functioning pretty well and has some

that plaintiff was discharged to his home because he did not meet the criteria for acute inpatient psychiatric treatment (Tr. 281). A subsequent CPEP report indicates that plaintiff was brought to ECMC by Buffalo Police on June 24, 2011, for psychiatric evaluation and lethality assessment following threats of suicide made while drinking with his cousin (Tr. 284-86). Dr. Dham Gupta, MD, reported that, upon mental status examination, plaintiff's intellectual functioning was average, there was no cognitive impairment, and the results of the examination were otherwise normal (Tr. 285). Dr. Gupta assessed a GAF score of 51-60, and otherwise deferred diagnosis. He stated that plaintiff was "in good control without any evidence of depression or acute psychosis" (Tr. 286), and plaintiff was again discharged to his home.

The record also contains the report of Michael Ranney, MS, CRC, Director of the Erie County Department of Mental Health Intensive Adult Mental Health Unit, who evaluated plaintiff at the Erie County Holding Center on February 10, 2011, in order to provide an opinion as to plaintiff's capacity to understand the proceedings against him and assist in his own defense of criminal charges stemming from an incident that occurred on February 5, 2011 (Tr. 297-98). On mental status examination, plaintiff appeared annoyed and was irritable, but there was no evidence that plaintiff was suffering from psychotic, manic, or depressive symptoms (Tr. 298). There was also no evidence of disorganized or delusional thinking or response to stimuli that could not be perceived by others (*id.*). Plaintiff denied violent or homicidal ideation (*id.*). Mr. Ranney's diagnosis was antisocial

---

meaningful interpersonal relationships. A GAF score of 71–80 indicates no more than a slight impairment in social, occupational, or school functioning (e.g., temporarily falling behind in schoolwork). *See* Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV-TR, at 34 (4th ed., rev. 2000).

personality disorder, and he determined that plaintiff understood the charges against him, was able to disclose the pertinent facts, was well-versed in legal terminology, and would be competent to testify (Tr. 298).

Noting this conflicting evidence of plaintiff's cognitive limitations, ALJ Mazzarella rejected Dr. Baskin's report and TONI-III intelligence evaluation, and gave little weight to Nurse Practitioner Roy's assessment (*id.*). The ALJ noted further that plaintiff's school records demonstrated his ability to complete standardized measures of intelligence, indicating an IQ within the low average range (*i.e.*, not within the mental retardation range), and that the medical records revealed no evidence of paranoid schizophrenia, major depression, bipolar disorder, or any psychotic disorder (Tr. 25).

Based on this review of the record, the court finds that the ALJ properly considered the evidence of plaintiff's "mild" mental retardation in making his determination that plaintiff's impairments, singly or in combination, did not meet or equal the severity of a listed mental impairment under the criteria of Listings 12.02, 12.05, and 12.08. As the cases within this Circuit have held, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Marquez*, 2013 WL 5568718, at *7 (quoting *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)).

Accordingly, the court finds that the ALJ's severity determination was not the product of legal error, and is supported by substantial evidence in the record.

### B.     Failure to Properly Evaluate Mental RFC

Plaintiff also contends that the ALJ failed to follow the requirements set forth in the Commissioner's Regulations and Rulings pertaining to the evaluation of RFC in mental disorders.  In this regard, the Regulations provide that, as a general matter:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 416.945(c).  As explained in some further detail in Social Security Administration Ruling ("SSR") 96-8p:

> Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96-8p, 1996 WL 374184, at *6 (S.S.A. July 2, 1996).

In assessing plaintiff's mental RFC in this case, the ALJ made reference to his findings with respect to the Listings criteria (*i.e.,* that plaintiff had moderate difficulties in maintaining social functioning, and moderate deficiencies of concentration, persistence or pace), and determined that a person with these limitations could meet the exertional demands of unskilled, remunerative work, with the non-exertional limitations of performing simple, repetitive, and routine tasks in a low contact work environment (Tr. 22).  This determination was based on a thorough review of the evidence in the record, which revealed a history of behavioral and attention problems, but did not support plaintiff's testimony and other statements of record concerning the intensity, persistence, and limiting

effects of his alleged mental disorder (Tr. 23). The ALJ discussed plaintiff's school records indicating that plaintiff's behavioral problems required special education placement in public elementary school classes, but he showed noted improvement in high school in the smaller classroom setting at Baker Academy (Tr. 23; *see also* Tr. 189-90). Although plaintiff's math scores on the WRAT administered in September 2003 were at the fourth grade level, his scores in reading and spelling on were at the high school level (Tr. 198).

The ALJ also found that plaintiff's mental health treatment records revealed behavioral issues, but did not support plaintiff's allegations of psychotic behavior or severe mental deficiency. For example, treatment records from Monsignor Carr Clinic indicate that plaintiff was evaluated in June 2004 for anger management issues. On mental status examination, plaintiff was withdrawn, with flat and apathetic mood, but had fair motivation, good appetite, and slept normally. Thought processes were logical, judgment was fair, intelligence was average, memory was normal, and attention and insight were fair. There was no evidence of hallucinations or delusions, and he was fully oriented. Plaintiff reported that he was worried over having food in his room, but exhibited no delusions or compulsive behavior (Tr. 265). He reported a "low lethal" suicide attempt in January 2004, and multiple low lethal assaults on his teachers (Tr. 266), but at the time of the evaluation he reported no suicidal or homicidal ideation (Tr. 268). Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD"), and was discharged without medication (Tr. 267). He was terminated from Monsignor Carr Mental Health Services on July 16, 2004, for noncompliance with treatment (Tr. 262). At the time of the termination, plaintiff had a GAF score of 60 (Tr. 262). Based on this thorough examination of the evidence, the ALJ

determined that plaintiff had the mental RFC for work at all exertional levels, limited to performing simple, repetitive, or routine tasks in a low contact setting (Tr. 22-26).

Upon review of the record as a whole, the court finds that the ALJ's RFC assessment adequately accounts for plaintiff's limitations in his ability to carry out work-related mental activities, in accordance with the requirements of the Social Security Regulations and Rulings, and that the record "yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the ALJ. *McKinzie*, 2010 WL 276740, at *6. Accordingly, plaintiff is not entitled to relief from the denial of his SSI application on the ground that the ALJ improperly assessed plaintiff's mental RFC.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 8) is denied, and the Commissioner's motion for judgment on the pleadings (Item 13) is granted.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

    \s\ John T. Curtin  
    JOHN T. CURTIN  
    United States District Judge

Dated:   June 18, 2014  
p:\pending\2013\13-178.ssa.jun9.2014